UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **AZMERA KESETE** | **CASE NO. 3:25-CV-01749 SEC P** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **BRIAN ACUNA ET AL** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**

Before the Court is a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction [Doc. No. 4] filed by Petitioner, Azmera Kesete ("Petitioner"). Respondents, Brian Acuna, Todd Lyons, and Kristi Noem ("Respondents") oppose the Motion [Doc. No. 9]. Petitioner filed a reply [Doc. No. 10]. After carefully considering Petitioner's filings and applicable law, the Motion is **DENIED**.

**I.    Background**

Petitioner is an Eritrean native and citizen, who illegally entered the United States sometime near April 6, 2023.[1] He was promptly arrested and an Immigration Judge ("IJ") conducted his credible fear interview.[2] The IJ denied Petitioner's asylum request, finding Germany granted him asylum, but granted Petitioner's request to withhold his removal to Eritrea based on the Convention Against Torture.[3] This decision became final on April 3, 2024, when the Board of Immigration Appeals affirmed the IJ's ruling.[4] Respondents have detained Petitioner ever since.[5]

---

[1] [Doc. No. 1, at ¶ 2].
[2] [Id.].
[3] [Id.]; [Doc. No. 1-3].
[4] [Doc. No. 1-2].
[5] [Doc. No. 1, at ¶ 21].

Page **1** of **9**

On November 12, 2025, Petitioner filed a Petition for Writ of Habeas Corpus ("Habeas Petition"), arguing his continued detention violates his statutory and constitutional rights.[6] The next day, Petitioner also filed the instant Motion, seeking the same relief as his Habeas Petition, while also arguing the Court should waive any bond security requirement when it releases Petitioner.[7]

The parties briefed all relevant issues, and the matter is ripe.

## II.     Law and Analysis

### A.     Jurisdiction

Federal courts have limited subject-matter jurisdiction and only possess those powers authorized by the Constitution and federal statutes, which may not be expanded by judicial decree. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). *Zadvydas v. Davis* unequivocally held that while Congress "enacted several statutory provisions that limit the circumstances in which judicial review of deportation decisions is available," 8 U.S.C. § 1231, the statute under which Petitioner is being detained, contains no such limitation. 533 U.S. 678, 687 (2001). As such, the Court is satisfied it has jurisdiction to hear Petitioner's case.[8]

### B.     Preliminary Relief

Federal courts may issue TROs without any notice to the adverse party only if:

> (A) specific facts in an affidavit or a verified complaint
> clearly show that immediate and irreparable injury, loss,

---

[6] [Id. at ¶¶ 25–31].
[7] [Doc. No. 4-1, pp. 6–10].
[8] Respondents argue the Court has no jurisdiction to "refrain Respondents from transferring Petitioner out of the jurisdiction of the ICE New Orleans Field Office Director during the pendency of these proceedings." [Doc. No. 9, p. 11 (citation modified)]. But Petitioner prays for this relief in his Habeas Petition [Doc. No. 1, p. 8] and makes no mention of this relief in the instant Motion. *See generally* [Doc. No. 4]. So, the Court does not address that argument.

>or damage will result to the movant before the adverse party can be heard in opposition; and
>(B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b).

Otherwise, a TRO is treated as a preliminary injunction, and the adverse party receives notice. *See Butts v. Aultman*, 953 F.3d 353, 361 n.6 (5th Cir. 2020) ("If there is an adversary hearing, or the order is entered for an indeterminate length of time, a temporary restraining order may be treated as a preliminary injunction.") (citation modified). Here, Respondents have notice of Petitioner's Motion and Petitioner seeks either a TRO or a preliminary injunction, so the Court analyzes the Motion under the preliminary injunction framework.

When considering whether to issue a preliminary injunction, lower courts must follow the four-part test from *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7 (2008). Parties "seeking a preliminary injunction must establish (1) that they are likely to succeed on the merits, (2) that they are likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in their favor, *and* (4) that an injunction is in the public interest." *Id.* at 20 (citation modified).

### 1. Likelihood of Success on the Merits

Petitioner makes two arguments. First, that his detention violates the Congressionally-prescribed limits in 8 U.S.C. § 1231, and second, that his detention violates constitutional due process requirements.[9]

---

[9] [Doc. No. 4-1, pp. 7–8].

Under § 1231, "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). This 90-day removal period begins on the latest of the following:

> (i) The date the order of removal becomes administratively final.
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B). But the 90-day cap may be extended if an alien does not cooperate in good faith, *see id.* § 1231(a)(1)(C), or if they are inadmissible. *See id.* § 1231(a)(6).

Petitioner claims his detention violates § 1231's 90-day cap.[10] Not so. Petitioner is an alien "present in the United States without being admitted or paroled,"[11] which makes him inadmissible under § 1182. *See* 8 U.S.C. § 1182(a)(6)(A)(i). Since he is inadmissible under § 1182, Petitioner "may be detained beyond the removal period." *Id.* § 1231(a)(6). Thus, Petitioner's statutory claims are not likely to succeed.

Even though Petitioner's detention is statutorily authorized, it must also satisfy the Constitution's due process requirements.[12] Detention under § 1231 that lasts six months or less is presumptively reasonable under the Constitution. *See Zadvydas*, 533 U.S. at 701. After six months if an "alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."

---

[10] [Id. at p. 8].
[11] [Id. at p. 5]; [Doc. No. 9-1, at ¶ 3].
[12] [Doc. No. 4-1, p. 7]; [Doc. No. 9, p. 15].

*Id.* As post-removal detention grows, "what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* Nevertheless, "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Petitioner argues that since Respondents detained him for over 19 months since his order of removal became final, they cannot "rebut the presumption that there is no significant likelihood of removal in the reasonably foreseeable future."[13] Petitioner misconstrues the law in making this argument.

Petitioner reads *Zadvydas* to say: detaining an alien for six months without removing him "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," which Respondents must then disprove. *Id.* He is mistaken. *Zadvydas* held that after the presumptively reasonable six months, "the alien" must show there is a "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* Only then does the burden shift to Respondents. *See id.* Petitioner has not provided any such "good reason." He, rather, makes a conclusory statement: "the government's ability to rebut the presumption" has "effectively vanished" due to the length of Petitioner's detention.[14] This is inadequate. *See Tawfik v. Garland*, No. 24-CV-2823, 2024 WL 4534747, at *3 (S.D. Tex. Oct. 21, 2024) (citing *Gonzalez v. Bureau of Immigr. & Customs Enf't*, No. 1:03-CV-178, 2004 WL 839654, at *2 (N.D. Tex. Apr. 20, 2004))

---

[13] [Doc. No. 4-1, p. 8].
[14] [Id.].

(holding conclusory allegations are insufficient to prove a *Zadvydas*-based claim). Therefore, Petitioner's constitutional claims also seem unlikely to succeed.

### 2. Irreparable Harm

Petitioner argues that his "unconstitutional deprivation of liberty, even on a temporary basis," constitutes irreparable harm.[15] Respondents counter that "[d]etention alone does not constitute irreparable harm," and holding that it does would make "nearly all habeas petitioners [entitled] to injunctive relief."[16]

Irreparable harm is intertwined with the role of preliminary injunctions, which is to "preserve the status quo until a trial" or other final disposition is rendered. *Lackey v. Stinnie*, 604 U.S. 192, 193 (2025). Courts sometimes describe irreparable harm as those injuries, which "cannot be undone through monetary remedies." *Interox Am. v. PPG Indus., Inc.*, 736 F.2d 194, 202 (5th Cir. 1984) (citation omitted). But that is only one side of the coin. Injuries must also hinder "the court's ability to render a meaningful decision on the merits" to constitute irreparable harm. *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 573 (5th Cir. 1974); *see also* Samuel L. Bray, *The Purposes of the Preliminary Injunction*, 78 Vand. L. Rev. 809, 823–26 (2025) (concluding the same after probing Founding-era sources). Put differently, "[t]here is always a status quo. There should not be a preliminary injunction to protect it, however, unless the court's ability to render a meaningful decision on the merits would otherwise be in jeopardy." *Callaway*, 489 F.2d at 573.

---

[15] [Id. at p. 9 (quoting *Kostak v. Trump*, No. 3:25-CV-1093, 2025 WL 2472136, at *3 (W.D. La. Aug. 27, 2025)].

[16] [Doc. No. 9, p. 15 (quoting *Abi v. Barr*, No. 19-CV-1033, 2019 WL 2463036, at *2 (D. Minn. June 13, 2019)].

Here, Petitioner seeks the same relief in his Habeas Petition and TRO—release from custody.[17] Liberty is inarguably the most paramount natural right. And true, the Fifth Circuit held even a momentary loss of a right creates irreparable harm. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (citation omitted) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). But context matters. In *Opulent Life Church*, the plaintiff leased property for a new church but was denied a renovation permit by the defendants. *Id.* at 283. The Fifth Circuit found the defendant's act caused irreparable harm because the plaintiff would "lose its lease if it is not allowed to operate in its leased property." *Id.* at 297. So, a final ruling on the merits would be too little, too late. Again, the inquiry is whether a final ruling would likely not grant a plaintiff the prayed-for relief. *See Callaway*, 489 F.2d at 573.

Nothing in Petitioner's filings suggests that unless the Court orders Petitioner's release at this stage, the Court's "ability to render a meaningful decision on the merits would otherwise be in jeopardy." *Callaway*, 489 F.2d at 573. As such, Petitioner has not met his burden to show that he is "likely to suffer irreparable harm in the absence of preliminary relief." *Winters*, 555 U.S. at 20.

### 3. Balance of Equities and Public Interest

The balance of the equities and the public interest factors "merge when the Government is the opposing party." *Clarke v. Commodity Futures Trading Comm'n*, 74 F.4th 627, 643 (5th Cir. 2023) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

---

[17] [Doc. No. 1, p. 8]; [Doc. No. 4-1, pp. 10–11].

These factors also favor Respondents as the government and the public have a strong interest in immigration laws being adequately enforced. *Landon v. Plasencia*, 459 U.S. 21, 34 (1982). Petitioner, conversely, has not shown he is likely to succeed on any of his theories that his detention is unlawful. Thus, Petitioner's proffered public interests—"protection of constitutional rights"; "the Government [complies] with its own laws"; and "[not] incarcerating people who have no basis to be detained"—are not seriously threatened.[18] As such, *Winter*'s third and fourth factors also favor not granting Petitioner a preliminary injunction.

As such, the Court concludes Petitioner is not entitled to preliminary relief.

### C. Bond Security and Attorney's Fees

Since the Court does not find that Petitioner is entitled to a preliminary injunction, Respondents' request that Petitioner pay a bond security is moot.[19] Respondents also allege Petitioner is not entitled to attorney's fees under the Equal Access to Justice Act,[20] but Petitioner made this request in his Habeas Petition[21] and not this Motion.[22] "If it is not necessary to decide more, it is necessary not to decide more." *PDK Labs., Inc. v. United States DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in judgment). So, the Court does not address that argument either.

### III. Conclusion

For all these reasons,

---

[18] [Doc. No. 4-1, pp. 9–10 (citations omitted)].
[19] [Doc. No. 9, p. 18].
[20] [Id.].
[21] [Doc. No. 1, p. 8].
[22] *See generally* [Doc. No. 4-1].

**IT IS ORDERED** that Petitioner's Motion for a TRO and a Preliminary Injunction [Doc. No. 4] is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Habeas Petition [Doc. No. 1] is referred to the Magistrate Judge.

MONROE, LOUISIANA, this 5th day of January 2026.

*[signature]*
_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE